1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRAVARE GRANT,                          No.  2:14-cv-1867 KJN P

12                  Plaintiff,

13        v.                                  ORDER AND FINDINGS AND
                                              RECOMMENDATIONS
14   MATTHEW CATE, et al.,

15                  Defendants.

16

17   Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss for failure to state

20   a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 34.)  For the following

21   reasons, the undersigned recommends that defendants' motion be granted in part and denied in

22   part.

23   Legal Standard for Motion to Dismiss

24          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

25   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

26   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

27   must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

28   (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

                                              1

1  McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

2  1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

3  than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

4  cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words,

5  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

6  statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim

7  upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570.

8  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

9  draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

10  U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes

11  of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co.,

12  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

13      A motion to dismiss for failure to state a claim should not be granted unless it appears

14  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

15  entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se

16  pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner,

17  404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz

18  v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal

19  interpretation of a pro se complaint may not supply essential elements of the claim that were not

20  pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

21  Plaintiff's Claims

22      This action is proceeding on the amended complaint filed October 31, 2014, as to

23  defendants Cate, Moss, Jason, Brown and Huser. (ECF No. 17.) Plaintiff alleges that on

24  November 17, 2011 he was transferred to the North Fork Correctional Facility ("NFCF"), located

25  in Oklahoma.[1] (Id. at 3.) At the time of plaintiff's transfer, African American inmates at NFCF

---

[1]  NFCF is a California Out–of–State Correctional Facility ("COCF") under California's COCF program to relieve overcrowding in California state prisons. The COCF program is one in which male California Department of Corrections and Rehabilitation ("CDCR") inmates are transferred to out-of-state correctional facilities that have contracted with CDCR to provide housing, security, health care and rehabilitative programming services to CDCR inmates. Cal. Code Regs.

1    were on an emergency lockdown following a riot between Hispanic and African American

2    inmates.  (Id.)  Plaintiff is African American.  (Id. at 3-4.)

3           Plaintiff alleges that upon his arrival at NFCF, he was labeled as a threat because he is

4    African American, even though he was not involved in the riot.  (Id.)  Plaintiff was told that he

5    would be placed on lockdown.  (Id. at 4.)  As a result of being placed on lockdown, plaintiff was

6    denied access to work, school and recreation activities.  (Id.)  Plaintiff alleges that he was on

7    lockdown for 11 months.  (Id.)

8           Plaintiff alleges that on January 25, 2012, defendants Jason, Brown and Huser denied

9    plaintiff's request for a transfer back to California following a classification hearing at NFCF.

10   (Id.)   Plaintiff alleges that during the classification hearing, plaintiff argued that he should not be

11   on lockdown because he was not involved in the riot.  (Id.)

12          Plaintiff alleges that defendant Moss, the Chief Deputy Warden at the CDCR Contract

13   Bed Units in Rancho Cordova, California, denied plaintiff's administrative appeal at the second

14   level.  (Id.)  Defendant Moss stated that plaintiff was a threat to the security of the facility, i.e.,

15   NFCF.  (Id.)  Plaintiff alleges that defendant Moss ordered that plaintiff remain on lockdown.

16   (Id.)

17          Plaintiff alleges that defendant Cate, the Director of CDCR, denied plaintiff's grievance at

18   the third level of review.  (Id. at 5.)

19   Defendants' Motion to Dismiss

20          *Defendants Huser, Jason and Brown*

21          Defendants argue that defendants Huser, Jason and Brown should be dismissed because

22   plaintiff does not have a constitutional right to be housed at a particular prison.  Defendants are

23   correct that inmates do not have a constitutional right to be housed at a particular prison.  See

24

25   tit. 15, § 3000.  COCF is a unit within the CDCR–Division of Adult Institutions whose mission is
     to transfer inmates out of state for the purpose of alleviating overcrowding within existing
26   institutions.  James v. Sweeny, 2013 WL 129393, at *1 n.1 (E.D.Cal. Jan. 9, 2013).  "Inmates
     transferred to a COCF program facility 'remain under the legal custody of the CDCR and shall be
27   subject to the rules, rights and privileges of the CDCR in accordance with [Title 15] of the
     California Code of Regulations.'"  Id. at 4, n. 7 (citing Cal.Code Regs. tit. 15, § 3379(a)(9)(I)).

28

                                                      3

1   <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976).  However, plaintiff is alleging that he was subject

2   to an unconstitutional race-based lockdown.  This claim states a potentially colorable claim for

3   relief.  See <u>Johnson v. California</u>, 543 U.S. 499, 509-15 (2005) (applying strict scrutiny to racial

4   classifications in prison context); <u>see also</u> <u>Richardson v. Runnels</u>, 594 F.3d 666, 671–72 (9th Cir.

5   2010) (prison officials must provide evidence "concerning the basis for regarding all African–

6   Americans as [ ] security risk[s] when one or a few African–American inmates are responsible for

7   an assault").  Accordingly, defendants' motion to dismiss on these grounds should be denied (and

8   see following discussion regarding who ordered the lockdown).

9           Defendants next argue that plaintiff had not adequately linked defendants Huser, Jason

10  and Brown to the alleged deprivations.  Citing California Code of Regulations, Title 15, §

11  3379(a)(9), defendants argue that CDCR retains plenary authority to transfer inmates out of state,

12  voluntarily or involuntarily.

13          Section 3379(a)(9) provides,

14              California Out-of-State Correctional Facility (COCF) Transfers.
                Every male inmate is potentially eligible for a COCF transfer.
15              Every male inmate shall be reviewed for transfer eligibility to the
                COCF program during Reception Center processing, at initial
16              classification committees, and at any classification committee when
                any temporary ineligibility for COCF transfer has been resolved.
17              COCF transfers may occur voluntarily or involuntarily.

18  Cal. Code Regs. tit. 15, § 3379(a)(9).

19          While section 3379(a)(9) indicates that COCF, a California state agency, makes the

20  decisions regarding which inmates are eligible for COCF transfers, this regulation does not

21  address how decisions are made regarding requests by COCF inmates to return to a California

22  prison.

23          Attached to plaintiff's amended complaint is a copy of the classification chrono signed by

24  defendants Huser, Jason and Brown.  (ECF No. 1 at 6.) This chrono states, in relevant part,

25              Grant requests a transfer back to California.  Grant was informed
                that COCF was not performing any convenience moves at this time.
26              Inmate Grant was not in agreement with this committee's decision
                and he was advised of his right to appeal.

27

28  (<u>Id.</u>)

1    As worded, this chrono indicates that COCF, and not defendants, could authorize a

2    "convenience move."  However, plaintiff was requesting to be transferred away from a prison

3    where he was subjected to an allegedly unconstitutional race based lockdown.  Plaintiff was not

4    requesting what the undersigned would consider to be a "convenience move," such as a move to

5    be housed in a prison closer to family.

6    Defendants have not cited any regulation addressing what agency or individuals had the

7    authority to review requests for non-convenience transfers by California inmates housed in COCF

8    out-of- state facilities.  Plaintiff's claim that defendants Huser, Jason and Brown had the authority

9    to authorize his non-convenience transfer back to a California prison is plausible.  See Ashcroft v.

10   Iqbal, 556 U.S. 662, 678 (2009) (citations omitted) (to survive a motion to dismiss, a complaint

11   "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'")

12   Plaintiff may also be claiming that these defendants improperly characterized his transfer request

13   as a "convenience" move.  Accordingly, defendants' motion to dismiss on grounds that they were

14   not authorized to order plaintiff's transfer back to a California prison should be denied.

15       *Challenge to Policy*

16   Defendants also argue that plaintiff's claims against all defendants should be dismissed

17   because he is really challenging the NCFC lockdown policy.  Defendants argue that none of the

18   named defendants promulgated the NCFC lockdown policy.  Defendants argue that they did not

19   cause the underlying condition on which plaintiff bases his complaint, i.e., the allegedly

20   unconstitutional race based lockdown.  In the motion to dismiss defendants argue,

21   
22   
23   
24   
25   
26   
> Per plaintiff's allegations, the NFCF Warden was E. Figueroa.
> ECF No. 1 at 20.  Plaintiff's Inmate/Parolee Appeal form complains
> that he was inappropriately on lockdown since he had not
> participated in the riot.  Id. at 15.  That document further states,
> "California has agreed to lift the lockdown, but the North Fork
> Correctional Facility Warden Figurora [sic] chooses to regulate
> differently, purposefully allowing progression only for particular
> races."  Id. at 16.  He also pleads that 'the Warden could have
> prevented this unfair treatment, however he chose not to and
> ordered that I remained locked down." (ECF No. 17, 4: 26-28).

27   ECF No. 34 at 6.

28   ////

1        In the section of their motion quoted above, defendants cite three pages from exhibits

2   attached to plaintiff's original complaint, i.e., ECF No. 1 at 15, 16 and 20. Pages 15 and 16 are

3   pages from the first level administrative grievance plaintiff filed regarding the alleged race based

4   lockdown. Defendant Moss's response to this grievance is also attached as an exhibit to the

5   original complaint. (Id. at 17.) Page 20 is a memorandum from Warden Fugueroa regarding the

6   lockdown. (Id. at 20.) As indicated above, this action is proceeding on plaintiff's amended

7   complaint, not the original complaint.

8        In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

9   in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

10   notice. Jacobson v. Schwarzenegger, 357 F.Supp.2d 1198, 1204 (C.D. Cal. 2004). However, in

11   order to "[p]revent [ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting ...

12   documents upon which their claims are based," a court may consider a writing referenced in a

13   complaint but not explicitly incorporated therein if the complaint relies on the document and its

14   authenticity is unquestioned. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superseded

15   by statute on other grounds as stated in Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006);

16   see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

17        Plaintiff's amended complaint clearly references defendant Moss's response to his

18   administrative grievance. (See ECF No. 17 at 4.) Accordingly, the undersigned may consider the

19   grievances attached to the original complaint because their authenticity is not questioned, i.e.,

20   ECF No. 1 at 15, 16.

21        Plaintiff's amended complaint makes no reference to Warden Figueroa's memorandum,

22   i.e. ECF No. 1 at 20. Defendants suggest that plaintiff's amended complaint refers to this

23   document, by citing plaintiff's statement that the "Warden could have prevented this unfair

24   treatment, however he chose not to and ordered that I remained locked down." (See ECF No. 17

25   at 4.) Nevertheless, whether or not the undersigned considers the Warden's memorandum

26   concerning his involvement in the race based lockdown does not alter the outcome of this motion

27   at the pleading stage.

28   ////

Turning to the merits of defendants' argument, it may be possible for plaintiff to state a potentially colorable claim against Warden Figueroa for imposing the allegedly unconstitutional race based lockdown.  However, this does not preclude plaintiff from stating a potentially colorable claim for relief against defendants based on their alleged failure to remove plaintiff from the prison where he was subject to these allegedly unconstitutional conditions.  Accordingly, defendants' motion to dismiss on these grounds should be denied.

*Defendants Moss and Cate*

Defendants move to dismiss defendants Moss and Cate on the grounds that their only involvement in the alleged deprivations was their denial of plaintiff's grievances.

In the amended complaint, plaintiff alleges that defendant Moss denied his grievance at the second level of review on the grounds that plaintiff was a threat to the security of NFCF. (ECF No. 17 at 4.)  Plaintiff alleges that defendant Moss ignored his claim that he was not involved in any riot at NFCF.  (Id.)  As discussed above, because plaintiff specifically refers to defendant Moss's denial of his second level grievance, the court may consider this grievance which plaintiff previously filed.

Defendant Moss's response to plaintiff's second level grievance states, in relevant part,

> Issue:  The appellant is submitting this appeal relative to modified programming at North Fork Correctional Facility (NFCF) claiming that it is race based, punitive and in bad faith.  Furthermore, it does not allow for out of cell privileges and attending job assignments.
>
> The appellant requests on appeal that he be allowed to participate in out of cell privileges and attend his job assignment.
>
> ****
>
> NCFC has utilized modified programs during situations where a disruption of orderly operations is caused by inmate initiated disturbance(s).  The modified programs are prudent actions by staff to ensure the safety of others and the security of the institution.  The appellant's allegation that the modified program is race based, punitive, and in bad faith is groundless.  In instances where the inmate population has engaged in an inmate initiated disturbance with another inmate faction, records support all involved populations are placed on modified programs.  The appellant has been identified as a member of a security threat group with a significant level of participation in the October 11, 2011 incident. Non-affiliates are often not subject to the full extent of a modified program....

7

1   (ECF No. 1 at 17.)

2          Defendants are correct that inmates have no separate constitutional right to a prison

3   grievance or appeal system.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v.

4   Adams, 855 F.2d 639, 640 (9th Cir. 1988).  However, plaintiff has not merely complained that

5   defendant Moss reviewed or denied his inmate appeals.  Rather, plaintiff alleges that he put

6   defendant Moss on notice through the inmate appeals process that he was being subjected to

7   allegedly unconstitutional conditions of confinement.   Defendant Moss directly addressed

8   plaintiff's concerns in his response to the second level grievance.  In this regard, plaintiff alleges

9   that defendant Moss's refusal to grant him relief from these unconstitutional conditions amounted

10   to a violation of his constitutional rights.  Cf. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006)

11   (prison officials in administrative positions may be liable for deliberate indifference when they

12   knowingly fail to respond to an inmate's request for help); Steinocher v. Smith, 2015 WL

13   1238549 at *4 (E.D. Cal. 2015) (plaintiff's claim that he put defendants on notice of ongoing

14   medical problems through grievances states a colorable Eighth Amendment claim).  Accordingly,

15   defendants' motion to dismiss defendant Moss on these grounds should be denied.

16          Plaintiff alleges that defendant Cate denied his third level grievance raising his claims

17   regarding being subject to a race based lockdown.  Because plaintiff refers to his third level

18   grievance in the amended complaint, the court may consider this grievance which plaintiff

19   previously filed.

20          Appeals Examiner Pool and Chief Lozano denied plaintiff's third level grievance.  (ECF

21   No. 1 at 12.)  Defendant Cate apparently was not involved in this decision as his name is not on

22   this document.

23          The Civil Rights Act under which this action was filed provides as follows:

24          Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
25          deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
26          law, suit in equity, or other proper proceeding for redress.

27   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

28   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

8

1   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

2   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

3   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

4   demonstrating their authorization or approval of such misconduct). "A person 'subjects' another

5   to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

6   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

7   legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy,

8   588 F.2d 740, 743 (9th Cir. 1978).

9       Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

10  their employees under a theory of respondeat superior and, therefore, when a named defendant

11  holds a supervisorial position, the causal link between him and the claimed constitutional

12  violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

13  (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

14  438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

15  denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of

16  official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673

17  F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

18  participation is insufficient).

19      Because defendant Cate did not participate in plaintiff's third level grievance, the

20  undersigned finds that plaintiff did not adequately link defendant Cate to the alleged deprivation.

21  On these grounds, the motion to dismiss defendant Cate should be granted.

22  Conclusion

23      The undersigned recommends that defendants' motion to dismiss be granted as to

24  defendant Cate, and denied in all other respects.

25      Defendants' motion to dismiss suggests that plaintiff has not named the proper defendants.

26  In order to ensure that plaintiff has named the proper defendants, plaintiff may wish to amend his

27  complaint to add as defendants those California officials who ordered his transfer to NFCF.

28  Plaintiff may also wish to name as defendants any additional NFCF officials who subjected him

1   to the lockdown.  Accordingly, plaintiff is granted thirty days to file a second amended complaint.

2        If plaintiff files a second amended complaint, he is informed that the court cannot refer to

3   a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220

4   requires that an amended complaint be complete in itself without reference to any prior pleading.

5   This requirement exists because, as a general rule, an amended complaint supersedes the original

6   complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second

7   amended complaint, the first amended complaint no longer serves any function in the case.

8   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

9   of each defendant must be sufficiently alleged.

10       Accordingly, IT IS HEREBY ORDERED that:

11       1.  The Clerk of the Court is directed to assign a district judge to this action;

12       2.  Plaintiff is granted thirty days to file a second amended complaint; defendants need not

13  respond to the second amended complaint until ordered by the court; if plaintiff does not file a

14  second amended complaint, this action will proceed on the first amended complaint; and

15       IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 34) be

16  granted as to defendant Cate and denied in all other respects.

17       These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22  objections shall be filed and served within fourteen days after service of the objections.  The

23  parties are advised that failure to file objections within the specified time may waive the right to

24  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25  Dated:  August 14, 2015

26

27                                              KENDALL J. NEWMAN
    Gr1867.mtd                                 UNITED STATES MAGISTRATE JUDGE
28

10